32

United States District Court
Southern District of Texas
ENTERED

SEP 2 9 1999

Michael N. Milby, Clerk of Court
By Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

RAQUEL REYES MARTINEZ            §
INDIVIDUALLY AND AS REPRESENTATIVE §
OF THE ESTATE OF ROBERTO MARTINEZ §
REYES                            §
                                 §
VS.                              §        CIVIL ACTION NO. B-97-270
                                 §
CITY OF BROWNSVILLE              §

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Pending before this Court is a Motion for Summary Judgment pursuant to Fed. R. Civ. P.

56(c) filed by Defendant City of Brownsville. (Docket No. 12). Plaintiff, Raquel Reyes Martinez

(Mrs. Martinez), has filed a Response to Defendant's Motion for Summary Judgment (Docket No.

16), a Supplemental Response to Defendant's Motion for Summary Judgment (Docket No. 30), and

a Second Supplemental Response to Defendant's Motion for Summary Judgment (Docket No. 31).

FACTS

Mrs. Martinez's claims arise from the hanging death of her son, Roberto Martinez Reyes

(hereinafter referred to as "Mr. Martinez"), at the Brownsville City Jail on January 10, 1996. She

brings this suit individually and as representative of the Estate of Mr. Martinez.    In Plaintiff's

Complaint (Docket No. 1), Mrs. Martinez asserts causes of action under 42 U.S.C. §1983 against

the Defendant for violations of the Eighth and Fourteenth Amendment to the United States

Constitution,  and the Texas Tort Claims Act, Tex. Civ. Prac. & Rem. Code §101.001, et seq.

(Docket No. 1).

On Wednesday, January 10, 1996 Brownsville Police Officers responded to a call at approximately 2:00 A.M. complaining of a drunken male subject. The officers observed silver paint stains on his hands, nose area and clothing. The "subject was determined to be highly intoxicated by aerosol paint and to be a threat to himself and others". (Defendant's Motion for Summary Judgment, Exhibit C, "Attachment I: Supplement to Custodial Death Report, Office of State Attorney General, pg. 1) At that point, he was arrested and transported to the Brownsville Municipal Jail located at the Brownsville Police Department, 600 East Jackson Street, Brownsville, Texas. Upon arrival at the jail, Mr. Martinez's identity was established and he was then processed by jail personnel and placed into a single cell and booked for Public Intoxication by Aerosol Paint.

At approximately 8:00 A.M. that same morning, jail personnel and municipal court bailiffs attempted to prepare Mr. Martinez for his arraignment in front of Municipal Court Judge Kip Van Johnson Hodge. However, Mr. Martinez was uncooperative with the staff[1] and he was arraigned instead in his cell later that morning. While he was incarcerated in the jail, Mr. Martinez "continued to cause a disturbance during the day, hollering at prisoners next to him and rattling the bars." *Id.* at 2. At approximately 2:00 P.M., Mr. Vargas, Mr. Martinez's case manager from Tropical Texas MHMR, called the jail and notified them that he was bringing Mr. Martinez's psychiatric prescription medication to the jail. Mr. Vargas delivered the medication at approximately 5:00 P.M. that afternoon. The medication which Mr. Vargas delivered consisted of Haldol, Zoloft, Buspar, and Ativan. These medications were never administered to Mr. Martinez. At approximately 6:50 P.M., Mr. Martinez was found slumped over his cell gate, with one end of his shirt tied to a horizontal bar

---

[1]According to jail personnel, Mr. Martinez was rattling the door and spitting at anyone who approached him. Jail personnel admitted having knowledge that Mr. Martinez was HIV positive and they were concerned about the physical safety of others due to Mr. Martinez's condition.

on the cell gate and the other end tied around his neck.  He was dead.

## STANDARD OF REVIEW

Summary judgment is proper in a case only if there is no genuine issue of material fact.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2552 (1986).  A defendant who seeks summary judgment on a plaintiff's cause of action must demonstrate that absence of genuine issue of material fact.  *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553.  To determine whether there is a genuine issue of material fact, the court must consider the summary judgment proof in the light most favorable to the plaintiff as the non-movant.

## 42 U.S.C. §1983 CLAIMS AGAINST THE CITY OF BROWNSVILLE

Although Plaintiff's complaint is vague and indefinite, this Court construes the cause of action under 42 U.S.C. §1983 to make claims under the 8th Amendment and the due process clause of the 14th Amendment.  See *Burns v. City of Galveston, Texas*, 905 F.2d 100 (5th Circuit 1990); where the 5th Circuit stated that pretrial detainees have a constitutional right under the due process and cruel and unusual treatment clauses not to have serious medical needs treated with deliberate indifference.

In cases such as this one, where plaintiff has alleged a failure of inadequate medical or psychiatric care[2], the Fifth Circuit has laid down a standard by which to assess a municipal defendant's liability.  The Court in <u>Olabisiomotosho v. City of Houston,</u> 1999 WL 615167 (5th Cir. Tex), stated the plaintiff in these cases must show: (1) that the municipal employee acted with subjective deliberate indifference to prove a violation of her constitutional rights, and (2) that this

---

[2]"A serious medical need may exist for psychological or psychiatric treatment, just as it may exist for physical ills." *Partridge v. Two Unknown Police Officers of the City of Houston, Texas*, 791 F.2d 1182 (5th Cir. 1986).

violation resulted from a municipal policy or custom adopted and maintained with objective deliberate indifference.

In reference to the first prong of this test,  the Court stated in *Olabisiomotosho* that liability attaches only if the municipal employee who acted with deliberate indifference knew about the risk.[3] *Id.* at 5.  The Court further stated that:

> ...if an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus "must have known" about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk. *Id.* at 6.

In application of this prong to the facts of the case at hand, Mrs. Martinez will have to  show that the jail personnel who displayed deliberate indifference to Mr. Martinez had knowledge of his suicidal tendencies.  In order to determine whether or not jail personnel had knowledge of this risk, we must look at the summary judgment evidence presented by both the plaintiff and the defendant. Defendant includes in its attached exhibits to its for Motion for Summary Judgment, an Inter-departmental Communication  Letter to the police chief by jailer Bryan Castro dated January 10, 1996.  (Exhibit C, Docket No. 12).  In this letter he states, "Medicine for Mr. Reyes was sometimes brought in by a nurse of South Tropical Center (sic) to be given to Mr. Reyes."  He continues in the letter, "Mr. Reyes was always yelling to the jailers about committing suicide was his usual behavior. (sic) This is why I paid closer attention to Mr. Reyes when he was detained." *Id.*  In Plaintiff's Second Supplemental Response To Defendant's Motion For Summary Judgment (Docket No. 31), a copy of Mr. Castro's deposition is attached as an exhibit.  Mr. Castro testified in his deposition that it was his understanding that Mr. Martinez was in his cell alone on the day in question because he was

---

[3]It is not adequate that an employee should have known of the risk, actual knowledge is required. *Olabisiomotosho v. City of Houston*, 1999 WL 615167 (5th Cir. Tex. 1999).

suicidal. ( Exhibit A, p. 18, lines 5-8). He also stated in his deposition that from his previous experience with Mr. Martinez before the arrest in question, he knew he could be a suicide risk. He further admitted that he knew of other times Mr. Martinez was assessed by MHMR for being a suicide risk during prior incarcerations at the Brownsville City Jail. Finally, he conceded that he knew that Mr. Martinez had been asking for his medication earlier in the day.

Other evidence that has been presented in this case includes a statement from Officer Eliborio Rios, the jail administrator, in which he admitted that the jail "had approved the dispensing of medication Tropical Texas (sic) provided Reyes[4] on numerous other occasions." (Brief in Support of Defendant's Motion for Summary Judgment, Docket No. 12, p.3) Further, Plaintiff has attached as an exhibit in her Brief for Supplemental Response to Defendant's Motion for Summary Judgment, Mr. Vargas'[5] deposition testimony in which he stated that there had been a history of prior arrests of Mr. Martinez where he was turned over to Tropical Texas MHMR due to his presentation of posing a suicide risk upon being detained in the Brownsville City Jail. (Docket No. 30, Exhibit A, p.8, line 10-23.) Also, it is an uncontested fact that Mr. Vargas brought Mr. Martinez's psychiatric medication to the jail on the day Mr. Martinez committed suicide and it is further uncontested that the jail personnel never administered this medication to Mr. Martinez. The evidence put forth as to this prong of the test supports the contention that there are material issues of fact in reference to the knowledge the jail staff had of Mr. Martinez's suicidal tendencies and whether or not they ignored these medical issues in a deliberately indifferent manner.

---

[4]Mr. Reyes in actuality is Mr. Martinez. The plaintiff refers to the decedent as Mr. Martinez, while the defendant refers to him as Mr. Reyes.

[5]Mr. Vargas was Mr. Martinez's case manager from Tropical Texas Department of Mental Health and Retardation.

However, for plaintiff to prevail on a §1983 claim against the City of Brownsville, they must also show that the plaintiff's constitutional rights were violated due to a policy or custom of the municipality. The Court in *Evans v. City of Marlin*, 986 F.2d 104, 107 (5th Cir. 1993), found that the City of Marlin had policies in place for the safe incarceration of inmates but that they were not strictly followed the night that inmate Evans committed suicide. The Court stated that the negligent act of an official will not support liability under §1983, and "Put another way, a reasonable juror could not find that [Marlin, Texas] adopted policies creating an obvious risk that pretrial detainee's constitutional rights would be violated." *Id.*

As to this second prong of the test, the plaintiff has put forth evidence in the form of Officer Castro's deposition testimony. Officer Castro testified that he had received on the job training as to what articles of clothing inmates could use to hang themselves and was under instruction to issue blue paper gowns to inmates that may be suicidal. See Plaintiff's Brief in Support of the Second Supplemental Response to Defendant's Motion for Summary Judgment. Defendant has also presented evidence that the jail has a policy of placing a potentially suicidal inmate alone in a cell and monitoring them by cell checks or observation through a closed circuit television camera. The Plaintiff has not presented any controverting evidence to show that these policies were implemented with deliberate indifference to the needs of a suicidal detainees. At most, Plaintiff has presented evidence suggesting potential negligence by the City of Brownsville, but this alone will not be sufficient evidence to establish a claim under §1983. See *Gange v. City of Galveston*, 805 F.2d 558 (5th Cir. 1986), cert. denied, 483 U.S. 1021, 107 S.Ct. 3266 (1987), (where the Court stated the failure to follow procedural guidelines, standing alone, does not implicate constitutional liability; see also *Davidson v. Cannon*, 474 U.S. 344, 347 106 S.Ct. 668, 670 (1986) ("Where a government

6

official is merely negligent in causing the injury, no procedure for compensation is constitutionally required."). Thus, the plaintiff can not establish that the second prong of the test has been met, and therefore her §1983 claim must be denied since the evidence presented only suggests that the first prong of the test set out in *Olabisiomotosho* can be satisfied. Accordingly, Defendant City of Brownsville's Motion for Summary Judgment should be granted in reference to Plaintiff's §1983 claim for a violation of Mr. Martinez's 8th Amendment constitutional rights.

## PLAINTIFFS CLAIMS UNDER THE TEXAS TORT CLAIMS ACT

Mrs. Martinez has alleged that City of Brownsville is negligent in its hiring practices of those persons attending the detainees in the city jail in one or more of the following ways:

A.   In failing to provide adequate jail personnel to insure the safety and protection of individuals who come into contact with jail officers employed by the City of Brownsville;

B.   In failing to provide proper supervision of jail personnel employed by the City of Brownsville;

C.   In failing to provide proper jail training for individuals employed by Defendant City of Brownsville in the field of suicide prevention;

D.   In failing to properly train and provide proper safety precautions for the jail personnel under the employment of the City of Brownsville;

E.   In failing to provide proper training regarding the provision of previously prescribed medication by jail personnel to detainees;

F.   In negligently hiring and negligently retaining inadequately trained employees as jail guards;

G.   In failing to have adequate suicide prevention training for its employees;

H.   In failing to properly use intake screening to identify suicide risks;

I.   In failing to implement and/or use proper procedures for a referral to mental health and/or medical personnel;

J.   In failing to have communication between correctional, medical and mental health staff in managing a suicidal inmate:

K.   Failing to have proper supervision and safe option housing for suicide inmates; and

L.   In failing to timely achieve medical intervention in suicide situations.

The plaintiff has also pleaded gross negligence, intentional infliction of emotional distress, and severe

mental anguish of the decedent. Each of these claims will be addressed separately in the following paragraphs.

As to the claim of negligence, the first step in determining the city's liability is deciding whether the action in question is a governmental or proprietary function. This determination is vitally important, as the Texas Tort Claim Act (TTCA), Tex. Civ. Prac. & Rem. Code §101.001, *et seq.,* does not apply to damages arising from a proprietary function. The statute lists those municipal activities which fall within a government function in §101.0215(a). The establishment and maintenance of a jail is specifically listed in this section. §101.0215(a)(7). However, "merely because a governmental action falls within section 101.0215, this does not mean that governmental immunity is waived." *McKinney v. City of Gainsville,* 814 S.W.2d 862, 863 (Tx. App.-Ft. Worth 1991, app denied).

The next step in the analysis is determining whether the state has waived the municipality's immunity under TTCA. This is concluded by looking at §101.021 to see if any of the waivers listed in this provision of the Act apply. Based on the facts of the case at hand, it appears the plaintiff may be able to recover under the Act based on §101.021(2) which provides that a government entity waives its immunity if, "personal injury and death so caused a condition or use of tangible personal or real property if the government unity would, were it a private person, be liable to the claimant according to Texas Law." The question then becomes whether the cell door that Mr. Martinez used to hang himself with can constitute "the use of tangible or real property." According to the Court in *Dallas Mental Health and Retardation v. Bossley,* 968 S.W. 2d 339, the test for this determination is if the use of tangible property proximately caused the personal injury or death of the plaintiff. In *Bossley,* the plaintiff was a patient at a county mental health facility who escaped through unlocked

8

hospital doors. After fleeing from the facility, the patient ran half a mile and leaped in front of an oncoming truck as he was about to be apprehended. The Court found that although the doors were a part of "a sequence of events that ended in his suicide, the use and condition of the doors were too attenuated from Roger's death to be said to have caused it". *Id*, at 343. However, in the case at hand, the cell door at the Brownsville City Jail was directly used in Mr. Martinez's suicide and therefore may be construed as proximately causing his death.[6]

Further, the affirmative defense of suicide is not available if Mr. Martinez's suicide was even partially caused by the City of Brownsville breaching an applicable legal standard (i.e. negligence). This defense is only available if the decedent's conduct was the sole cause of his death. *Evans v. City of Marlin*, 986 F2d. 104 (5th Cir. 1993). Whether or not the actions of the City of Brownsville amounts to a breach of the legal standard of due care is question of fact. Since there has been evidence presented by both the plaintiff and the defendant which suggests that negligence may have played a role in Mr. Martinez's suicide, it cannot be said that no genuine issue of fact remains. Therefore, the plaintiff's claims against the City of Brownsville for negligence should survive the defendant's motion for summary judgment.

However, plaintiff's claims for gross negligence, intentional infliction of emotional distress, and mental anguish of the decedent are all barred by the Texas Tort Claim Act. see *Jones v. Houston Independent School* District, 979 F.2d 1004, (5th Cir. 1992);( where the Court stated that under the

---

[6]An argument can be made that "negligence in the use or condition of real property does not state a cause of action under the Act, unless it is a premise defect claim under section 101.022(1)." *Dallas Mental Health and Retardation v. Bossley*, 968 S.W. 2d 339, 341 (1998). However, the Court in that case refrained from addressing that issue because the defendant had failed to make the argument. Therefore, since the issue has yet to be resolved on the state court level, this Court refrains from addressing it as well.

Texas Tort Claims Act, municipality is not liable for intentional torts);  see also *Hockaday v. Texas Department of Criminal Justice, Pardons and Paroles Division*, 914 F.Supp. 1439 (S.D.Tex. 1996); (where Court stated Texas Tort Claims Act does not waive sovereign immunity from liability for gross, as distinguished from simple, negligence).

## DISMISSAL OF STATE LAW CLAIMS WITHOUT PREJUDICE

The general rule in the Fifth Circuit is for courts to dismiss state law claims when the federal claims they are supplementing get dismissed. *Gray v. Doty*, 1998 WL 417773 (N.D. Tex). The Supreme Court in *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 349, 108 S.Ct. 614, 618 (1988), stated that, "... a federal court should consider and weigh in each case, and at every stage of litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." *Id*, at 349, 618. Additionally, it is a well settled principle that federal courts are "courts of limited jurisdiction... and often are not as well equipped for determinations of state law as are state courts." *Gray v. Doty*,  1998 WL 417773 (N.D. Tex). In *Gray*, the plaintiff's §1983 claims were dismissed and the only claims that were left were those arising under the Texas Tort Claims Act. The Court in that case dismissed the state law claims without prejudice reasoning that the state courts are more familiar with the Texas Tort Claims Act and were better suited for hearing that issue. *Id.* Further, under Texas law, the statute of limitations is tolled from the date the Plaintiff files his cause of action until the date the Court dismisses it. Tex. Civ. Prac. & Rem. Code §16.064. Hence, a plaintiff will not be barred from refiling a cause of action under the Texas Tort Claims Act in state court. Since the plaintiff in the case at hand is only left with a state law claim of negligence under the Texas Tort

10

Claims Act as well,  and for the reasons the Courts set forth in *Carnegie Mellon University* and *Gray*, this court recommends that the state law claim be dismissed without prejudice .

IT IS THEREFORE **RECOMMENDED** that Defendant's Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56(c) be:

**GRANTED** as to the 42 U.S.C. §1983 federal claims;

**DENIED** as to the state law claims under the Texas Tort Claims Act, Tex. Civ. Prac. & Rem. Code §101.001, *et seq.* and further, Plaintiff's state law claims be **DISMISSED WITHOUT PREJUDICE.**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

DONE at Brownsville, Texas, this 23rd day of September, 1999.

John Wm. Black.
United States Magistrate Judge

11